600 S.E.2d 911

**Naheed Saeed MORRILL**

v.

**Clarence Grant MORRILL, II.**

**Record No. 1461–03–4.**

Court of Appeals of Virginia,
Alexandria.

Aug. 17, 2004.

McClanahan, J., dissented and filed opinion.

622

Robert H. Cox, McLean (Robert M. Bruskin, Washington, DC; Christopher J. DelliCarpini, Rockville, MD; Howrey Simon Arnold & White, LLP, Washington, DC, on briefs), for appellant.

Martin A. Gannon (James Ray Cottrell, Alexandria; David H. Fletcher; Christopher W. Schinstock; Kyle F. Bartol; Gannon & Cottrell, on brief), for appellee.

Present: ANNUNZIATA, FELTON and McCLANAHAN, JJ.

ANNUNZIATA, Judge.

Naheed Saeed Morrill (wife) appeals from a final decree of divorce from Clarence Grant Morrill, II (husband). She contends that the trial court erred by reopening the record on an issue heard by the commissioner in chancery, making a finding

inconsistent with that of the commissioner, and, thereby, entering an internally inconsistent divorce decree. For the reasons that follow, we vacate the trial court's equitable distribution award and remand for reconsideration of the equities.

## I. Background

■ On appeal, we review the evidence in the light most favorable to the party prevailing below. *Jacobsen v. Jacobsen*, 41 Va.App. 582, 589, 586 S.E.2d 896, 899 (2003). So viewed, the evidence establishes that wife filed a bill of complaint for divorce from husband on the grounds of desertion and cruelty. Husband filed a cross-bill of complaint for divorce on the grounds of constructive desertion and cruelty.

The trial court entered a decree of reference, governed by the Fairfax County Circuit Court's March 11, 1996 general decree relating to divorce causes. The general decree directed the commissioner in chancery to make findings on the grounds of divorce, including the circumstances and factors that may have contributed to the dissolution of the marriage, but further provided that "the effect of that behavior upon the well-being of the family and/or marital property and its value are to be presented at the equitable distribution hearing." The decree ordered the commissioner to answer, *inter alia*, the following:

6. Were the grounds of divorce alleged in the pleadings proved by corroborated testimony, and if so, how proved?

\* \* \* \* \* \* \*

8A. For those situations in which either party seeks relief under the so-called equitable distribution provisions of the Code of Virginia, upon request of either party state the circumstances and factors which may have contributed to the dissolution of the marriage, (which shall include any conduct constituting grounds for divorce, any specific act of cruelty and/or any extramarital relationship). However, the effect of that behavior upon the well-being of the family and/or the marital property and its value are to be present-

ed at the equitable distribution hearing. Evidence that a party did not contribute nonmonetarily to the well-being of the family, thereby requiring the other party to take on additional marital responsibilities should also be presented at the equitable distribution hearing.

At the commissioner's hearing, husband presented evidence to establish that he was justified in leaving the marriage because he discovered wife had fraudulently incurred credit card debt, amounting to almost $86,000, in husband's name alone and without his knowledge.

The commissioner's report recommended that wife's grounds for divorce on desertion be granted because husband had not met his burden of proving the credit card forgery allegation. The commissioner stated,

the evidence on this issue [the credit card debt] is in equipoise. With the testimony of one party in total contradiction of the other party, as clearly supported by the record here, and no other evidence beyond the documents from which both parties are testifying, GRANT MORRILL did not meet his burden of proving by a preponderance of the evidence that NAHEED MORRILL forged his signature in the circumstances and for the purposes for which he has testified.

The commissioner found that, even if husband had proved that wife had forged his name to incur the credit card debt without his knowledge or permission, it would not constitute legal justification for deserting the marriage. Husband filed exceptions to the commissioner's report.

At the equitable distribution hearing, the trial court heard husband's exceptions to the commissioner's report, which included objections to the commissioner's findings regarding: (1) the failure to prove legal justification for the husband leaving the marriage, and, (2) the failure to prove the credit card forgery allegations. Husband asked the trial court to take additional evidence from a handwriting expert on the latter issue. He argued the evidence that the commissioner had previously taken was for the limited purpose of establish-

ing the grounds of divorce and, therefore, the trial court could take new evidence for the purpose of equitable distribution in accordance with section 8A of the general decree of reference. Wife argued that, because the commissioner had taken evidence on the forgery allegations, the record on the issue was closed.

The trial court allowed husband to present evidence on the credit card forgery issue, including testimony by a handwriting expert. The court explained its ruling, stating that it would allow the presentation of additional evidence on the credit card forgery issue, not for the purpose of determining whether it constituted legal justification for desertion, but rather only for the purposes of determining the equitable distribution of the marital estate. The court stated,

> [W]hat strikes me is that it was raised in a different context, and for a different purpose ... you may have a defendant who wants to fight the desertion issue, but not with the same force that he wants to fight it on an equitable distribution ground and for that reason he does not call a handwriting expert.
>
> I can tell you that I will not hear issues in this trial that have already been—that were referred to the Commissioner, and the Commissioner has already taken testimony on it, but my reaction, having now had an opportunity to study this matter is that for the purposes for which [husband's counsel] is raising it, it was not raised before the Commissioner, and it is not resolved.

New evidence on the forgery issue was then admitted for the purposes of equitable distribution.

At the conclusion of the hearing, the trial court sustained the commissioner's report, but stated, "I don't see any reason why I need to go back and grant the Husband's exceptions on the Commissioner's findings." The court granted wife a divorce on the grounds of desertion, stating that even if husband had proved the credit card forgery allegations, he would not have established a legal justification for deserting the marriage. The court also stated that it found the handwriting

expert to be credible, and it accordingly concluded that wife incurred the credit card charges "without [husband's] consent and through a process of forgery." The court further stated, "as to the circumstances contributing to the dissolution of the marriage, while I do not find that the forgeries constitute a legal justification for desertion, I do find that [the forgeries are] a significant factor" in determining an equitable distribution award pursuant to Code § 20–107.3(E).

In the final order, entered on May 9, 2003, the court found that wife amassed credit card debt in the amount of approximately $86,000. The court stated "that the Wife forged the credit card access checks" and "that the credit card charges and checks were incurred by the Wife without the Husband's knowledge and through a process of forgery and fraud by the Wife." The trial court therefore ordered wife to "fully indemnify the Husband should the Husband hereafter be obligated and required to pay any or all of the total credit card debt." The court also awarded husband any fees and costs associated with calling the handwriting expert in the equitable distribution hearing.

At the May 9, 2003 hearing on the entry of the final decree, wife, by way of an exception to the final decree, continued to assert that the court was bound by the commissioner's findings on the credit card forgery issue. The court treated wife's exception as a motion for reconsideration, and, after hearing brief argument, denied the motion. The court stated, "I do not see that we—that what I did here and the findings I made, I don't find in any way that they're precluded by what happened before the Commissioner."

## II. Analysis

### A. Reopening of the Record

In matters of divorce and equitable distribution, we will not overturn a decision committed to the trial court's sound discretion unless there is a showing that it abused that discretion. An abuse of discretion can be found if the court uses "an improper legal standard in exercising its discretion-

ary function." *Congdon v. Congdon,* 40 Va.App. 255, 262, 578 S.E.2d 833, 836 (2003) (citations and internal quotation marks omitted). We find that the trial court abused its discretion because it erred as a matter of law in reopening the record on the issue of wife's alleged forgery.

Code § 8.01–610 provides: "The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence." The trial court here confirmed the commissioner in chancery's report. However, at husband's urging, the trial court reopened the record on the ground that the Fairfax County Circuit Court general decree permitted it to reexamine the factual finding made by the commissioner in chancery regarding the allegation that wife fraudulently used husband's credit cards because the same factual issue arose in a different legal context, viz. in the context of equitable distribution. Wife contends that, by its own terms, the general decree does not permit the trial court to reexamine the commissioner's determination that husband failed to prove his allegations of forgery. She also argues that our decision in *Joynes v. Payne,* 36 Va.App. 401, 551 S.E.2d 10 (2001), compels the conclusion that the trial court erred in reopening the record. We agree with wife.

" 'Although trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously.' 'Furthermore, an order must be interpreted within its four corners.'" *Smoot v. Commonwealth,* 37 Va.App. 495, 500, 559 S.E.2d 409, 411–12 (2002) (quoting *Rusty's Welding Service v. Gibson,* 29 Va.App. 119, 130, 510 S.E.2d 255, 261 (1999); *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). We find that the trial court's interpretation of the general decree is not supported by a plain reading of its language and is, therefore, not reasonable.

The general decree directs the commissioner in chancery to "state the circumstances and factors which may have

contributed to the dissolution of the marriage, (which shall include any conduct constituting grounds for divorce, any specific act of cruelty and/or any extramarital relationship)." "However," the general decree continues, "the *effect* of *that* behavior upon the well-being of the family and/or the marital property and its value are to be presented at the equitable distribution hearing" before the trial court. (Emphasis added).

By the plain terms of the general decree, the commissioner in chancery was directed to make findings of fact on whether husband proved the allegations asserted as grounds for divorce or as factors and circumstances leading to the dissolution of marriage, viz. wife's alleged forgery. It only excepted from the commissioner's authority the taking of evidence which relates to the *effects* "of *that* behavior on the well-being of the family and/or the marital property and its value." (Emphasis added). In short, as directed by the general decree, the commissioner in the instant case determined whether the alleged forgery—the basis of husband's grounds for divorce and a factor or circumstance relevant to the equitable distribution of marital assets [1]—was proved. The trial court, as directed by the general decree, was to determine the effects of any proved forgery on the well-being of the family and marital property; the general decree permitted nothing more.

In this case, the commissioner in chancery specifically found that the forgery did not occur because husband failed to carry his burden of proof. Indeed, the trial court accepted the commissioner in chancery's report. Because the general decree did not permit the trial court to reexamine the commissioner in chancery's determination that the forgery did not occur, we find that this Court's decision in *Joynes* controls the outcome. In *Joynes*, we held that an attempt to introduce

---

1. Code § 20–107.3(E)(5) provides that the "circumstances and factors which contributed to the dissolution of the marriage" shall be considered in making an equitable distribution award.

additional evidence into the record after the commissioner [in chancery] has filed his report is treated as a motion to receive after-discovered evidence. Four requirements must be met before a record can be reopened to receive additional evidence: (1) the evidence must have been discovered after the record was closed; (2) it could not have been obtained prior to the closing of the record through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative, or collateral, and (4) it is material, and as such, should produce an opposite result from that contained in the commissioner's report.

*Joynes,* 36 Va.App. at 418, 551 S.E.2d at 18 (citations omitted).

 Here, husband did not establish that the testimony of the handwriting expert could not have been obtained before the commissioner in chancery filed her report. Indeed, husband presented no argument or evidence, and the trial court issued no ruling, related to the *Joynes* test for reopening the record. As such, the trial court erred in reopening the record on the forgery issue.[2] Accordingly, we vacate the equitable distribution award and we remand to the trial court for reconsideration of the equities.

### B. Attorney Fees

 Wife requests that we vacate the trial court's award of attorney's fees and costs to husband, which award was based on the handwriting expert's fee and the portion of husband's attorney's fees attributable to the forgery issue. Because we

---

**2.** Nothing in our opinion changes well-established law that a commissioner in chancery's report does not have the binding effect of a jury verdict, *see* Code § 8.01–610, or that the commissioner in chancery serves to aid, not replace, the trial court's judicial function. *See Dukelow v. Dukelow,* 2 Va.App. 21, 26–27, 341 S.E.2d 208, 211 (1986). We hold only that where an order refers certain issues to a commissioner in chancery and thereby defines the scope of the commissioner's evidentiary responsibilities relative to those of the trial court, whether the record should be reopened is governed by existing law. Here, the trial court could have rejected the commissioner's report or husband could have established that the *Joynes* requirements were met. *See* Code § 8.01–610; *Joynes,* 36 Va.App. at 418, 551 S.E.2d at 18.

find that the trial court erred in hearing additional evidence on the forgery issue, we vacate the award of attorney's fees and costs.

 Husband requests this Court to direct wife to pay his attorney's fees and costs incurred on appeal. *See O'Loughlin v. O'Loughlin*, 23 Va.App. 690, 695, 479 S.E.2d 98, 100 (1996). We deny the request in part. However, we find that husband is entitled to attorney's fees and costs incurred in responding to wife's "Motion to Deny Appellee Oral Hearing," which was based on husband's failure to file a brief with proper margins pursuant to Rule 5A:4. Rule 5A:4(C) provides that no appeal shall be dismissed for failure to comply with the Rule, but that the Clerk may require that the document be redone in compliance with the rule. The Clerk did not require husband's brief to be redone; thus, the brief was deemed to be in compliance with the rule. Wife's motion was without merit. Therefore, we remand to the trial court with direction that it award husband reasonable attorneys fees and costs incurred in defending that motion. *Id.*

*Vacated and remanded.*

McCLANAHAN, Judge, dissenting.

I disagree with the majority's holding in this case and, for the reasons that follow, would affirm the judgment of the trial court.

"The Supreme Court has defined the authority of a commissioner in chancery in an equity proceeding as 'an officer appointed by the chancellor to aid him in the proper and expeditious performance of his duties.'" *Kelker v. Schmidt*, 34 Va.App. 129, 136–37, 538 S.E.2d 342, 346 (2000) (quoting *Raiford v. Raiford*, 193 Va. 221, 226, 68 S.E.2d 888, 891 (1952)), *see also Haase v. Haase*, 20 Va.App. 671, 678–79, 460 S.E.2d 585, 588 (1995). The Fairfax County Circuit Court general decree directs a commissioner in chancery to find the grounds of divorce alleged in the pleadings. And, in those cases in which a party seeks equitable distribution, the commissioner is required to determine the circumstances and

factors that may have contributed to the dissolution of the marriage. However, section 8A of the general decree specifically reserves to the trial court the findings relevant to any behavior on the part of the parties that affects the well-being of the family, its marital property and value. Those findings are to be made at the hearing on equitable distribution. Section 8A of the decree of reference makes it clear that hearings on the grounds of divorce and hearings on equitable distribution are separate and that findings at the divorce stage are not binding at the equitable distribution stage.

Upon a review of the record, it is clear that both the commissioner and chancellor understood that the commissioner's scope of referral was limited to a finding on the issue of the grounds of divorce. The issue of how the parties' behavior may have impacted the equitable distribution of the marital estate specifically was not referred to the commissioner, but reserved to the trial court. The commissioner found, and the chancellor affirmed, that even if husband had proven the credit card forgery allegations, they would not amount to legal justification for desertion of the marriage. The commissioner did not find that the forgery did not occur. Therefore the trial court was not precluded from hearing evidence on the forgery allegations as behavior that had an effect "upon the well-being of the family and/or the marital property and its value" as part of the equitable distribution hearing, as provided by section 8A of the general decree of reference.

The majority's characterization of the evidence husband presented to the trial court as "additional evidence" subject to the test recited in *Joynes v. Payne*, 36 Va.App. 401, 551 S.E.2d 10 (2001), is misplaced. *Joynes* involved a situation where all of the issues in the divorce proceeding were referred to the commissioner in chancery. In the *Joynes* case, there was nothing left for the trial court to do but to hear exceptions to the commissioner's report, either confirm or reject the report, and enter the final decree. In *Joynes*, this Court stated that it would not consider whether the request to present additional evidence was improperly denied, as the record did not disclose the nature of the evidence and the

circumstances surrounding the request.[3] In the case at bar, every issue in the proceeding, including the issue of equitable distribution, was reserved to the trial court, "other than the factors and circumstances contributing to the dissolution of [the] marriage; fault grounds to the extent pled or testified and the other statutory requirements to establish the jurisdiction of the court in the divorce proceeding." (Transcript from commissioner's hearing, February 14, 2003, p. 5, lines 10–15.) Therefore, because in this case, unlike in *Joynes*, there were issues left to the trial court that were not before the commissioner, the *Joynes* test for admission of additional evidence does not apply.

As the majority indicates, trial courts "have the authority to interpret their own orders." *Fredericksburg Constr. Co., Inc. v. J.W. Wyne Excavating, Inc.,* 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000). However, on appeal, " 'when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court.' " *Albert v. Albert,* 38 Va.App. 284, 298, 563 S.E.2d 389, 396 (2002) (quoting *Fredericksburg Constr. Co.,* 260 Va. at 144, 530 S.E.2d at 152; *Rusty's Welding Serv., Inc. v. Gibson,* 29 Va.App. 119, 129, 510 S.E.2d 255, 260 (1999) (en banc)); *see also Leitao v. Commonwealth,* 39 Va.App. 435, 438, 573 S.E.2d 317, 319 (2002) (stating, "we defer to a trial court's interpretation of its own order"); *Smoot v. Commonwealth,* 37 Va.App. 495, 500, 559 S.E.2d 409, 411 (2002). The trial court's interpretive discretion, however, "must be exercised reasonably and not arbitrarily or capriciously." *Smoot,* 37 Va.App. at 500, 559 S.E.2d at 412 (citation omitted). The analysis therefore, requires determining whether the trial court abused its discretion when interpreting its decree of reference to the commis-

---

**3.** Additionally, in contradistinction to the majority's view of the case, in *Joynes,* after the chancellor wholly affirmed the commissioner's report, it "awarded child support in a different amount than that recommended by the commissioner, presumably based upon the actual amount of private school tuition." 36 Va.App. at 426 n. 5, 551 S.E.2d at 24 n. 5. That statement suggests that in order to make its determination of the child support amount, the trial court had evidence before it that was not before the commissioner.

sioner. That analysis does not allow this Court to substitute its own interpretation for the trial court's interpretation, if the trial court's construction is reasonable. I believe that the trial court's interpretation of the decree of reference was reasonable and falls within the latitude we afford trial courts in the construction of their own decrees. For that reason, I would not find that the chancellor abused his discretion in hearing the forgery evidence for purposes of equitable distribution.

Moreover, "[w]hen a court refers a cause to a commissioner in chancery, it does not delegate its judicial functions to the commissioner and is not bound by the commissioner's recommendations. Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required." *Dukelow v. Dukelow*, 2 Va.App. 21, 26–27, 341 S.E.2d 208, 211 (1986) (citing *Lawrence v. Lawrence*, 212 Va. 44, 47, 181 S.E.2d 640, 643 (1971)). Code § 8.01–610 provides: "The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence."

The commissioner limited her discussion on the forgery issue to whether the evidence presented at the commissioner's hearing satisfied the burden of proof, and only as to its effect on the desertion issue. The commissioner wrote,

> Finally the evidence on this issue is in equipoise. With the testimony of one party in total contradiction of the other party, as clearly supported by the record here, and no evidence beyond the documents from which both parties are testifying, GRANT MORRILL did not meet his burden of proving by a preponderance of the evidence that NAHEED MORRILL forged his signature in the circumstances and *for the purposes for which he has testified.*

(Emphasis added.) The purpose for which husband was testifying was not equitable distribution, but grounds of divorce. The commissioner did not make a finding on the issue beyond

whether husband had proven it for the purposes of legal justification for desertion.

Further, the commissioner did not make a specific finding that wife did not commit the forgery. The commissioner found the evidence to be in equipoise—neither proven nor disproven. The only finding that the commissioner made with regard to the forgery was to state, "However, even if true, the circumstances do not necessarily give rise to a finding of legal justification, as argued by him, or preclude the finding of desertion based on the evidence presented." Such a statement does not rise to the level of a finding that wife did not commit the forgery. In fact, the statement leads to the conclusion that the commissioner did not need to make a finding on this issue, because it was not relevant to the purpose of the hearing, which was establishing the grounds of divorce.

The chancellor accepted and affirmed the commissioner's report with regard to its findings on the issue of the grounds of divorce. The chancellor found no reason to grant husband's exceptions because he agreed with the commissioner's view that the wife's forgery of credit card checks would not amount to legal justification for desertion of the marriage. However, affirmation of that finding on the grounds of divorce issue did not preclude the court from hearing evidence on the forgery allegations with regard to their effect on the equitable distribution award. The forgery allegations were a factor and circumstance that led to the dissolution of the marriage, even though not proven for that purpose. The sentence in section 8A of the general decree, which says, "However, the effect of that behavior upon the well-being of the family and/or the marital property and its value are to be presented at the equitable distribution hearing," clearly indicates that the findings of the commissioner are not binding on the court in its equitable distribution hearing. The trial court was within its authority to examine evidence regarding the effect of the allegations on the marital property.

In this case, the commissioner was not authorized to make findings on equitable distribution; that task was left to the trial court. The commissioner made her findings on the grounds of divorce, and the trial court made its findings on equitable distribution, as required by section 8A of the decree of reference. As stated above, trial courts "have the authority to interpret their own orders." *Fredericksburg Constr. Co., Inc.*, 260 Va. at 144, 530 S.E.2d at 152. Therefore, I respectfully dissent. The trial court did not abuse its discretion in so interpreting the general decree.