COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
         Clements, Felton, Kelsey, McClanahan and Haley
Argued at Richmond, Virginia


NAHEED SAEED MORRILL
                                                    OPINION BY
v.      Record No. 1461-03-4               JUDGE ELIZABETH A. McCLANAHAN
                                                    JUNE 7, 2005
CLARENCE GRANT MORRILL, II


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

        Alexander B. Berger (Robert H. Cox; Howrey Simon Arnold &
        White, LLP, on brief), for appellant.

        Christopher W. Schinstock (James Ray Cottrell; Gannon &
        Cottrell, on brief), for appellee.


        By published opinion dated August 17, 2004, a divided panel of this Court vacated the

judgment of the trial court.  Morrill v. Morrill, 43 Va. App. 621, 600 S.E.2d 911 (2004).  On

September 21, 2004, we granted Clarence Morrill's petition for rehearing *en banc*, stayed the

mandate of the panel decision, 44 Va. App. 18, 602 S.E.2d 410 (2004), and reinstated the appeal.

Upon reconsideration *en banc*, we affirm the judgment of the trial court.

        Naheed Saeed Morrill (wife) appeals from a final decree of divorce from Clarence Grant

Morrill, II (husband).  She contends that the trial court erred by reopening the record on an issue

heard by the commissioner in chancery, making a finding inconsistent with that of the

commissioner, and, thereby, entering an internally inconsistent divorce decree.  For the reasons

that follow, we affirm the trial court.

## I. BACKGROUND

On appeal, we review the evidence in the light most favorable to the party prevailing below. Jacobsen v. Jacobsen, 41 Va. App. 582, 589, 586 S.E.2d 896, 899 (2003) (citation omitted). So viewed, the evidence establishes that wife filed a bill of complaint for divorce from husband on the grounds of desertion and cruelty. Husband filed a cross-bill of complaint for divorce on the grounds of constructive desertion and cruelty.

The trial court entered a decree of reference, "governed by the General Order for Commissioners of March 11, 1996." The general order directs the commissioner in chancery to answer specific questions in a divorce cause. The commissioner's questions pertinent to this case are the following:

> 6. Were the grounds for divorce alleged in the pleadings proved by corroborated testimony, and if so, how proved?
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> 8A. For those situations in which either party seeks relief under the so-called equitable distribution provisions of the Code of Virginia, upon request of either party state the circumstances and factors which may have contributed to the dissolution of the marriage, (which shall include any conduct constituting grounds for divorce, any specific act of cruelty and/or any extramarital relationship). However, the effect of that behavior upon the well-being of the family and/or the marital property and its value are to be presented at the equitable distribution hearing. Evidence that a party did not contribute nonmonetarily to the well-being of the family, thereby requiring the other party to take on additional marital responsibilities should also be presented at the equitable distribution hearing.

At the commissioner's hearing, husband presented evidence to establish that he was justified in leaving the marriage because he discovered wife had fraudulently incurred credit card debt, amounting to almost $86,000, in husband's name alone and without his knowledge. However, the commissioner's report recommended that wife's grounds for divorce on desertion

be granted because husband had not met his burden of proving the credit card forgery allegation. The commissioner stated,

> the evidence on this issue [the credit card debt] is in equipoise. With the testimony of one party in total contradiction of the other party, as clearly supported by the record here, and no other evidence beyond the documents from which both parties are testifying, GRANT MORRILL did not meet his burden of proving by a preponderance of the evidence that NAHEED MORRILL forged his signature in the circumstances and for the purposes to which he has testified.

The commissioner concluded that, even if husband had proven that wife had forged his name to incur the credit card debt without his knowledge or permission, it would not constitute legal justification for deserting the marriage. Husband filed exceptions to the commissioner's report.

At the equitable distribution hearing, the trial court heard husband's exceptions to the commissioner's report, which included objections to the commissioner's findings regarding: (1) the failure to prove legal justification for the husband leaving the marriage, and, (2) the failure to prove the credit card forgery allegations. Husband asked the trial court to take additional evidence from a handwriting expert on the latter issue.

The trial court allowed husband to present evidence on the credit card forgery issue, including testimony by a handwriting expert. At the conclusion of the hearing, the trial court sustained the commissioner's report, but stated, "I don't see any reason why I need to go back and grant the Husband's exceptions on the Commissioner's findings." The court granted wife a divorce on the grounds of desertion, stating that even if husband had proven the credit card forgery allegations, he would not have established a legal justification for deserting the marriage. The court also stated that it found the handwriting expert to be credible, and it accordingly concluded that wife incurred the credit card charges "without [husband's] consent and through a process of forgery." The court further stated, "as to the circumstances contributing to the dissolution of the marriage, while I do not find that the forgeries constitute a legal justification

for desertion, I do find that [the forgeries are] a significant factor" in determining an equitable distribution award pursuant to Code § 20-107.3(E).

In the final order, entered on May 9, 2003, the court found that wife amassed credit card debt, by forgery and fraud, in the amount of approximately $86,000, and therefore ordered wife to "fully indemnify the Husband should the Husband hereafter be obligated and required to pay any or all of the total credit card debt." The court also awarded husband any fees and costs associated with calling the handwriting expert in the equitable distribution hearing.[1]

At the May 9, 2003 hearing on the entry of the final decree, wife, by way of an exception to the final decree, continued to assert that the court was bound by the commissioner's findings on the credit card forgery issue. The court treated wife's exception as a motion for reconsideration, and, after hearing brief argument, denied the motion.

II. ANALYSIS

"When a court refers a cause to a commissioner in chancery, it does not delegate its judicial functions to the commissioner, and it is not bound by the commissioner's recommendations. Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required." Dukelow v. Dukelow, 2 Va. App. 21, 26-27, 341 S.E.2d 208, 211 (1986) (citing Lawrence v. Lawrence, 212 Va. 44, 47, 181 S.E.2d 640, 643 (1971)). "The Supreme Court has defined the authority of a commissioner in chancery in an equity proceeding as 'an officer appointed by the chancellor to aid him [or her] in the proper and expeditious performance of his [or her] duties.'" Kelker v. Schmidt, 34

---

[1] We need not address the issue of the trial court's award of attorney's fees and costs to husband, because wife has abandoned that issue for rehearing *en banc*. See Schwartz v. Brownlee, 253 Va. 159, 161-62, 482 S.E.2d 827, 829 (1997) (failure to include an assignment of error in the petition for rehearing constitutes an abandonment of that assignment of error). Wife did not raise the issue as a question presented nor develop any argument on it in her *en banc* brief. Cf. Rule 5A:20. See Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992); see also Rogers v. Rogers, 170 Va. 417, 421, 196 S.E. 586, 588 (1938).

Va. App. 129, 136-37, 538 S.E.2d 342, 346 (2000) (quoting <u>Raiford v. Raiford</u>, 193 Va. 221, 226, 68 S.E.2d 888, 891 (1952)); <u>see also</u> <u>Haase v. Haase</u>, 20 Va. App. 671, 678-79, 460 S.E.2d 585, 588 (1995).  Code § 8.01-610 provides:  "The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence."

The Fairfax County Circuit Court general order directs commissioners in chancery to answer whether the grounds of divorce alleged in the pleadings were proven.  The order also asks the commissioner, in those cases in which a party seeks equitable distribution, to "state the factors and circumstances that *may* have contributed to the dissolution of the marriage." (Emphasis added).  But, it specifically reserves to the trial court the authority to make findings and legal conclusions relative to the possible factors and circumstances and how they affect the well-being of the family, the equitable distribution of the parties' property, and allocation of debt.  Those findings and legal conclusions are not to be made at the commissioner's hearing, but are to be made at the trial court's hearing on equitable distribution.

In fact, Code § 20-107.3(E) *requires the trial court* to consider the factors and circumstances that contributed to the dissolution of the marriage along with the grounds of divorce when dividing or transferring jointly owned marital property, making a monetary award, and apportioning the marital debts of the parties.  The commissioner's job is to aid the trial court by stating all *possibilities*, but the commissioner is not given authority to determine the ultimate question as to whether the factors or circumstances actually had an impact on the break-up of the marriage for purposes of equitable distribution.

Code § 20-107.3(E)(5) requires the court to consider the circumstances and factors that contributed to the dissolution of the marriage without limiting the trial court to considering only

- 5 -

the grounds of divorce that were proven. See Code § 20-107.3(E)(5). Whether a party has

proven such a factor or circumstance as legal grounds for divorce is different from whether it had

an impact on the marriage dissolving. In this case, while not proven as the grounds of divorce,

the debt created by the wife's credit card forgeries was a factor that contributed to the dissolution

of the marriage. More importantly, Code § 20-107.3(E)(7) specifically requires the trial court to

consider "the debts and liabilities of each spouse [and] the basis for such debts and

liabilities . . . ." See Gamer v. Gamer, 16 Va. App. 335, 341, 429 S.E.2d 618, 623 (1993); see

also Trivett v. Trivett, 7 Va. App. 148, 155, 371 S.E.2d 560, 564 (1988). Finally, Code

§ 20-107.3(E)(11) authorizes the court to consider any evidence that impacts equitable

distribution.[2] Thus, in this case, the trial court's equitable distribution decision is inseparable

from its resolution of the fraud issue. The trial court interpreted the decree of reference and

general order as not invading its authority under Code § 20-107.3(E) to examine evidence

regarding the effect of the forgery allegations on the marital property and equitable distribution

award.[3]

---

[2] Code § 20-107.3(E)(11) states "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award."

[3] Wife characterizes the evidence husband presented to the trial court as "additional evidence" subject to the test recited in Joynes v. Payne, 36 Va. App. 401, 551 S.E.2d 10 (2001). We disagree. Joynes involved a situation where *all* of the issues in the divorce proceeding were referred to the commissioner in chancery. In that case, there was nothing left for the trial court to do but to hear exceptions to the commissioner's report, either confirm or reject the report, and enter the final decree. In Joynes, this Court stated that it would not consider whether the request to present additional evidence was improperly denied, as the record did not disclose the nature of the evidence and the circumstances surrounding the request. Id. at 418, 551 S.E.2d at 18. In the case at bar, there were "no other issues [for the commissioner] to recommend or report to the court, other than the factors and circumstances contributing to the dissolution of [the] marriage; fault grounds to the extent pled or testified and the other statutory requirements to establish the jurisdiction of the court in the divorce proceeding." (Transcript from commissioner's hearing, February 14, 2003, p. 5, lines 10-15.) Every other issue in the proceeding was reserved to the trial court, including the issue of equitable distribution. The Joynes test for admission of additional evidence, therefore, does not apply.

- 6 -

Upon a review of the record, it is clear that the commissioner's scope of referral under the decree of reference and general order was limited to answering whether the grounds of divorce alleged in the pleadings were proven and to state any circumstance or factor that *may* have contributed to the dissolution of the marriage. The commissioner and the trial court interpreted the decree and order as so limited. In her report, the commissioner limited discussion on the forgery issue to whether the evidence presented at the commissioner's hearing satisfied the burden of proof for desertion. The commissioner stated that the evidence on the forgery issue was found to be in "equipoise" – neither proven nor disproven. The commissioner did not make a factual finding that wife did not commit the forgery. Instead, the commissioner wrote, "GRANT MORRILL did not meet his burden of proving by a preponderance of the evidence that NAHEED MORRILL forged his signature . . . ." Whether wife had committed fraud in incurring the debt was not before the commissioner. The only finding that the commissioner made with regard to the forgery was to state, "However, even if true, the circumstances do not necessarily give rise to a finding of legal justification, as argued by him, or preclude the finding of desertion based on the evidence presented."

The court accepted and affirmed the commissioner's report with regard to its findings on the issue of whether the grounds of divorce had been proven. However, affirmation of the commissioner's finding on the grounds of divorce issue did not preclude the court from hearing evidence on the forgery allegations with regard to their effect on the equitable distribution award. The forgery allegations were a factor and circumstance that led to the dissolution of the marriage, even though not proven as a justification for desertion.

The trial court's interpretation of the decree of reference and general order was reasonable and falls within the latitude we afford trial courts in the construction of their own decrees. On appeal, "'when construing a lower court's order, a reviewing court should give

- 7 -

deference to the interpretation adopted by the lower court.'" Albert v. Albert, 38 Va. App. 284, 298, 563 S.E.2d 389, 396 (2002) (quoting Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000); Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999) (*en banc*)).  Thus, we do not find that the court abused its discretion in hearing the forgery evidence for purposes of equitable distribution under its interpretation of the decree and general order.

Husband requests the Court to direct wife to pay his attorney's fees and costs incurred on appeal.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  On review, the litigation addressed appropriate and substantial issues, and wife did not generate unnecessary delay or expense in pursuit of her interests.  Therefore, the request is denied.

### III.  CONCLUSION

The commissioner was not authorized to make findings on equitable distribution; that task was left to the trial court.  The commissioner reported on the grounds of divorce in accordance with section 6 of the general order of reference, and the trial court made its findings on equitable distribution, as required by Code § 20-107.3 and section 8A of the order of reference.  Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Humphreys, J., with whom Benton, Frank, Clements, and Felton, JJ., join, dissenting.

I disagree with the majority's conclusion that, under the circumstances of this case, the trial court was permitted to hear additional evidence relating to a finding of fact that had already been made by the commissioner in chancery and accepted by the trial court. Because I would reverse the judgment of the trial court, I respectfully dissent.

A.

Decisions concerning the admissibility of evidence are committed to the sound discretion of the trial court. Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). However, "a trial court has no discretion to admit clearly inadmissible evidence because admissibility of evidence depends not upon the discretion of the court but upon sound legal principles." Gray v. Rhoads, 268 Va. 81, 86, 597 S.E.2d 93, 96 (2004) (internal quotations omitted). Similarly, "'[a]lthough trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously.'" Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 411-12 (2002) (quoting Rusty's Welding Serv. v. Gibson, 29 Va. App. 119, 130, 510 S.E.2d 255, 261 (1999)).

Generally, a court order "'must be interpreted within its four corners.'" Id. (quoting United States v. Armour & Co., 402 U.S. 673, 682 (1971)). According to the decree of reference, entered December 11, 2002, the trial court referred these divorce proceedings to the commissioner "for the purpose of taking evidence of the parties and their witnesses, and reporting to [the trial court] findings, conclusions of law, [and] recommendations in regard to the allegations contained in the pleadings." The decree further indicates that its execution was to be "governed by the General Order for Commissioners," which provides, in pertinent part, that the commissioner is to make findings as to "the circumstances and factors which may have contributed to the dissolution of the marriage," but that evidence as to "the *effect* of that behavior

- 9 -

upon the well-being of the family and/or marital property and its value [is] to be presented at the equitable distribution hearing." (Emphasis added).

Thus, under the "four corners" of the decree, the commissioner was responsible for receiving evidence and making factual findings as to the factors (including the parties' behavior) that contributed to the dissolution of the marriage. The trial court, in contrast, was responsible for receiving evidence and making factual findings as to how those factors *affected* the marriage and the value of the marital estate.

Here, the commissioner received evidence from both parties on the issue of whether wife engaged in certain "behavior"—specifically, whether she forged husband's name on multiple credit card receipts. The commissioner then made a factual finding that, based on the evidence before her, husband failed to prove that wife engaged in that behavior. Specifically, the commissioner found that

> [T]he evidence on this issue is in equipoise. With the testimony of one party in total contradiction of the other party, as clearly supported by the record here, and no other evidence beyond the documents from which both parties are testifying, [husband] did not meet his burden of proving by a preponderance of the evidence that [wife] forged his signature in the circumstances and for the purposes which he has testified.

During the equitable distribution hearing, the trial court accepted the commissioner's report, but it then permitted husband to present additional evidence on the issue of whether wife engaged in the alleged "behavior." However, once the commissioner determined that wife did not engage in that behavior, and the trial court accepted that finding of fact, the decree of reference limited the trial court to receiving evidence as to the *effect* of wife's behavior upon the marriage—not whether she engaged in that behavior in the first place.[4]

---

[4] The majority states that the commissioner merely found that husband failed to carry his burden of proof, concluding that this statement is not equivalent to a factual finding that wife did not commit forgery. However, as wife argues, courts typically state factual findings in terms of a

- 10 -

For example, if the commissioner had determined that wife forged husband's name upon the credit card receipts, the trial court would have been authorized to receive evidence as to the effect of wife's forgery upon the marriage and the marital estate. But even under those circumstances, the trial court would have been precluded from allowing wife to present additional evidence to prove that, contrary to the commissioner's finding, she did not commit the alleged forgery.[5]

Simply put, on the issue of whether wife committed forgery, the parties were limited to the evidence they had already presented to the commissioner. Unquestionably, the trial court had the authority to reexamine the evidence that was presented to the commissioner and to conclude, based upon an independent review of that evidence, that the commissioner's factual findings were erroneous. See Orgain v. Butler, 255 Va. 129, 132, 496 S.E.2d 433, 435 (1998) (noting

---

party's failure to meet his burden of proving that particular fact. See, e.g, Woo v. Smart, 247 Va. 365, 371, 442 S.E.2d 690, 694 (1994) ("The trial court made the *factual finding* that the [party] 'failed to carry her burden of proo[f] . . . .'" (emphasis added)). Thus, implicit in a court's statement that a party failed to carry his burden of proof is a finding that, for purposes of those proceedings, the "fact" (*e.g.*, "forgery") does not exist, and the status quo (*e.g.*, "no forgery") controls. See, e.g., Brothers Constr. Co. v. Va. Empl. Comm'n, 26 Va. App. 286, 294-95, 494 S.E.2d 478, 482 (1998) (noting that, if an employer "fails to meet its burden of pro[ving]" that an employment relationship does *not* exist, the court must presume that an employment relationship *does* exist); see also Charles E. Friend, The Law of Evidence in Virginia § 9-3(a)(2) (6th ed. 2003) ("The party who seeks to change the status quo . . . is often said to have the burden of proof.").

[5] The trial court reasoned, and the majority implies, that husband should be permitted to introduce additional evidence relating to wife's alleged behavior because husband was introducing the evidence "in a different context, and for a different purpose." However, under the circumstances of this case, the subjective purpose for which the evidence was offered is irrelevant. By the very nature of these bifurcated proceedings, evidence introduced in the first phase would be in a "different context" and for a "different purpose" than evidence introduced in the second phase. But the fact that the legal issue being decided differs from phase to phase of a trial or other court proceeding does not make evidence relating to an already-determined factual issue admissible in the later phase to prove or disprove that same fact. Cf. McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 305 (5th Cir. 1993) (noting that, where the district court ordered a separate trial on the issue of causation, "if the first jury decides the causation issue, the second jury cannot consider that same issue"). This would be akin to permitting a criminal defendant to relitigate the issue of his guilt during sentencing proceedings.

that, "[a]lthough the report of a commissioner in chancery does not carry the weight of a jury verdict, the report should be sustained *unless* the chancellor concludes that the commissioner's findings [of fact] are not supported by the evidence . . . taken in the commissioner's presence" (emphasis added) (citation omitted)); see also Code § 8.01-610. But neither Code § 8.01-610 nor this decree of reference reserve to the trial court any authority to hear *additional* evidence to use as a predicate for deciding whether a particular finding of fact was, in fact, erroneous.

Thus, I would hold that the decree of reference clearly delegated to the commissioner the responsibility to receive evidence and to make factual findings relating to wife's "behavior." And, once the commissioner found that wife did not engage in that behavior, the evidentiary record on that particular issue was closed and should not have been reopened unless husband met his burden of proving that the evidence satisfied the four-prong test set forth in Joynes v. Payne, 36 Va. App. 401, 551 S.E.2d 10 (2001).

B.

In Joynes, this Court held that a party's attempt to introduce "additional evidence into the record after the commissioner has filed his report is treated as a motion to receive after-discovered evidence." Id. at 418, 551 S.E.2d at 18. Thus, in order to reopen the record, four requirements must be met:

> (1) the evidence must have been discovered after the record was closed; (2) it could not have been obtained prior to the closing of the record through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative, or collateral, and (4) it is material, and, as such, should produce an opposite result from that contained in the commissioner's report.

Id.

Here, husband did not present any evidence indicating that the expert witness testimony "was discovered after the record was closed," nor did he contend that the evidence "could not have been obtained prior to the closing of the record through the exercise of reasonable

- 12 -

diligence." Because husband did not carry his burden of proving that the evidence met the four-prong test required for admitting after-discovered evidence, I would hold that the trial court erred when it reopened the record on the issue of wife's alleged forgery.

C.

For these reasons, I believe that the trial court abused its discretion because it erred, as a matter of law, in reopening the record to hear additional evidence on the issue of whether wife engaged in the alleged behavior. See Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003) (noting that the trial court abuses its discretion if it uses "an improper legal standard in exercising its discretionary function" (internal quotations omitted)); see also Gray, 268 Va. at 86, 597 S.E.2d at 96. Because I would reverse the judgment of the trial court, I respectfully dissent.

Tuesday                    21st

September, 2004.


Naheed Saeed Morrill,                                                    Appellant,

 against            Record No. 1461-03-4
                    Circuit Court No. CH169135

Clarence Grant Morrill, II,                                            Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner,
Frank, Humphreys, Clements, Felton, Kelsey and McClanahan


On August 31, 2004 came the appellee, by counsel, and filed a petition praying that the Court set

aside the judgment rendered herein on August 17, 2004, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered

herein on August 17, 2004 is stayed pending the decision of the Court *en banc*, and the appeal is

reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file with the clerk of this Court twelve

additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


NAHEED SAEED MORRILL
                                                       OPINION BY
      v.      Record No. 1461-03-4          JUDGE ROSEMARIE ANNUNZIATA
                                                      AUGUST 17, 2004
CLARENCE GRANT MORRILL, II


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Randy I. Bellows, Judge

          Robert H. Cox (Robert M. Bruskin; Christopher J. DelliCarpini;
          Howrey Simon Arnold & White, LLP, on briefs), for appellant.

          Martin A. Gannon (James Ray Cottrell; David H. Fletcher;
          Christopher W. Schinstock; Kyle F. Bartol; Gannon & Cottrell,
          on brief), for appellee.


       Naheed Saeed Morrill(wife) appeals from a final decree of divorce from Clarence Grant

Morrill, II (husband).  She contends that the trial court erred by reopening the record on an issue

heard by the commissioner in chancery, making a finding inconsistent with that of the

commissioner, and, thereby, entering an internally inconsistent divorce decree.  For the reasons

that follow, we vacate the trial court's equitable distribution award and remand for

reconsideration of the equities.

                                 I.  Background

       On appeal, we review the evidence in the light most favorable to the party prevailing

below.  Jacobsen v. Jacobsen, 41 Va. App. 582, 589, 586 S.E.2d 896, 899 (2003).  So viewed,

the evidence establishes that wife filed a bill of complaint for divorce from husband on the

grounds of desertion and cruelty.  Husband filed a cross-bill of complaint for divorce on the

grounds of constructive desertion and cruelty.

The trial court entered a decree of reference, governed by the Fairfax County Circuit Court's March 11, 1996 general decree relating to divorce causes. The general decree directed the commissioner in chancery to make findings on the grounds of divorce, including the circumstances and factors that may have contributed to the dissolution of the marriage, but further provided that "the effect of that behavior upon the well-being of the family and/or marital property and its value are to be presented at the equitable distribution hearing." The decree ordered the commissioner to answer, *inter alia*, the following:

> 6. Were the grounds of divorce alleged in the pleadings proved by corroborated testimony, and if so, how proved?
>
>      \*      \*      \*      \*      \*      \*      \*
>
> 8A. For those situations in which either party seeks relief under the so-called equitable distribution provisions of the Code of Virginia, upon request of either party state the circumstances and factors which may have contributed to the dissolution of the marriage, (which shall include any conduct constituting grounds for divorce, any specific act of cruelty and/or any extramarital relationship). However, the effect of that behavior upon the well-being of the family and/or the marital property and its value are to be presented at the equitable distribution hearing. Evidence that a party did not contribute nonmonetarily to the well-being of the family, thereby requiring the other party to take on additional marital responsibilities should also be presented at the equitable distribution hearing.

At the commissioner's hearing, husband presented evidence to establish that he was justified in leaving the marriage because he discovered wife had fraudulently incurred credit card debt, amounting to almost $86,000, in husband's name alone and without his knowledge.

The commissioner's report recommended that wife's grounds for divorce on desertion be granted because husband had not met his burden of proving the credit card forgery allegation. The commissioner stated,

> the evidence on this issue [the credit card debt] is in equipoise. With the testimony of one party in total contradiction of the other party, as clearly supported by the record here, and no other

> evidence beyond the documents from which both parties are testifying, GRANT MORRILL did not meet his burden of proving by a preponderance of the evidence that NAHEED MORRILL forged his signature in the circumstances and for the purposes for which he has testified.

The commissioner found that, even if husband had proved that wife had forged his name to incur the credit card debt without his knowledge or permission, it would not constitute legal justification for deserting the marriage. Husband filed exceptions to the commissioner's report.

At the equitable distribution hearing, the trial court heard husband's exceptions to the commissioner's report, which included objections to the commissioner's findings regarding: (1) the failure to prove legal justification for the husband leaving the marriage, and, (2) the failure to prove the credit card forgery allegations. Husband asked the trial court to take additional evidence from a handwriting expert on the latter issue. He argued the evidence that the commissioner had previously taken was for the limited purpose of establishing the grounds of divorce and, therefore, the trial court could take new evidence for the purpose of equitable distribution in accordance with section 8A of the general decree of reference. Wife argued that, because the commissioner had taken evidence on the forgery allegations, the record on the issue was closed.

The trial court allowed husband to present evidence on the credit card forgery issue, including testimony by a handwriting expert. The court explained its ruling, stating that it would allow the presentation of additional evidence on the credit card forgery issue, not for the purpose of determining whether it constituted legal justification for desertion, but rather only for the purposes of determining the equitable distribution of the marital estate. The court stated,

> [W]hat strikes me is that it was raised in a different context, and for a different purpose . . . you may have a defendant who wants to fight the desertion issue, but not with the same force that he wants to fight it on an equitable distribution ground and for that reason he does not call a handwriting expert.

- 3 -

> I can tell you that I will not hear issues in this trial that have already been – that were referred to the Commissioner, and the Commissioner has already taken testimony on it, but my reaction, having now had an opportunity to study this matter is that for the purposes for which [husband's counsel] is raising it, it was not raised before the Commissioner, and it is not resolved.

New evidence on the forgery issue was then admitted for the purposes of equitable distribution.

At the conclusion of the hearing, the trial court sustained the commissioner's report, but stated, "I don't see any reason why I need to go back and grant the Husband's exceptions on the Commissioner's findings." The court granted wife a divorce on the grounds of desertion, stating that even if husband had proved the credit card forgery allegations, he would not have established a legal justification for deserting the marriage. The court also stated that it found the handwriting expert to be credible, and it accordingly concluded that wife incurred the credit card charges "without [husband's] consent and through a process of forgery." The court further stated, "as to the circumstances contributing to the dissolution of the marriage, while I do not find that the forgeries constitute a legal justification for desertion, I do find that [the forgeries are] a significant factor" in determining an equitable distribution award pursuant to Code § 20-107.3(E).

In the final order, entered on May 9, 2003, the court found that wife amassed credit card debt in the amount of approximately $86,000. The court stated "that the Wife forged the credit card access checks" and "that the credit card charges and checks were incurred by the Wife without the Husband's knowledge and through a process of forgery and fraud by the Wife." The trial court therefore ordered wife to "fully indemnify the Husband should the Husband hereafter be obligated and required to pay any or all of the total credit card debt." The court also awarded husband any fees and costs associated with calling the handwriting expert in the equitable distribution hearing.

- 4 -

At the May 9, 2003 hearing on the entry of the final decree, wife, by way of an exception to the final decree, continued to assert that the court was bound by the commissioner's findings on the credit card forgery issue. The court treated wife's exception as a motion for reconsideration, and, after hearing brief argument, denied the motion. The court stated, "I do not see that we – that what I did here and the findings I made, I don't find in any way that they're precluded by what happened before the Commissioner."

## II. Analysis

### A. Reopening of the Record

In matters of divorce and equitable distribution, we will not overturn a decision committed to the trial court's sound discretion unless there is a showing that it abused that discretion. An abuse of discretion can be found if the court uses "an improper legal standard in exercising its discretionary function." Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003) (citations and internal quotation marks omitted). We find that the trial court abused its discretion because it erred as a matter of law in reopening the record on the issue of wife's alleged forgery.

Code § 8.01-610 provides: "The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence." The trial court here confirmed the commissioner in chancery's report. However, at husband's urging, the trial court reopened the record on the ground that the Fairfax County Circuit Court general decree permitted it to reexamine the factual finding made by the commissioner in chancery regarding the allegation that wife fraudulently used husband's credit cards because the same factual issue arose in a different legal context, viz. in the context of equitable distribution. Wife contends that, by its own terms, the general decree does not permit

- 5 -

the trial court to reexamine the commissioner's determination that husband failed to prove his allegations of forgery. She also argues that our decision in Joynes v. Payne, 36 Va. App. 401, 551 S.E.2d 10 (2001), compels the conclusion that the trial court erred in reopening the record. We agree with wife.

"'Although trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously.' 'Furthermore, an order must be interpreted within its four corners.'" Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 411-12 (2002) (quoting Rusty's Welding Service v. Gibson, 29 Va. App. 119, 130, 510 S.E.2d 255, 261 (1999); United States v. Armour & Co., 402 U.S. 673, 682 (1971)). We find that the trial court's interpretation of the general decree is not supported by a plain reading of its language and is, therefore, not reasonable.

The general decree directs the commissioner in chancery to "state the circumstances and factors which may have contributed to the dissolution of the marriage, (which shall include any conduct constituting grounds for divorce, any specific act of cruelty and/or any extramarital relationship)." "However," the general decree continues, "the *effect* of *that* behavior upon the well-being of the family and/or the marital property and its value are to be presented at the equitable distribution hearing" before the trial court. (Emphasis added).

By the plain terms of the general decree, the commissioner in chancery was directed to make findings of fact on whether husband proved the allegations asserted as grounds for divorce or as factors and circumstances leading to the dissolution of marriage, viz. wife's alleged forgery. It only excepted from the commissioner's authority the taking of evidence which relates to the *effects* "of *that* behavior on the well-being of the family and/or the marital property and its value." (Emphasis added). In short, as directed by the general decree, the commissioner in the instant case determined whether the alleged forgery—the basis of husband's grounds for divorce

- 6 -

and a factor or circumstance relevant to the equitable distribution of marital assets[1]—was proved. The trial court, as directed by the general decree, was to determine the effects of any proved forgery on the well-being of the family and marital property; the general decree permitted nothing more.

In this case, the commissioner in chancery specifically found that the forgery did not occur because husband failed to carry his burden of proof. Indeed, the trial court accepted the commissioner in chancery's report. Because the general decree did not permit the trial court to reexamine the commissioner in chancery's determination that the forgery did not occur, we find that this Court's decision in Joynes controls the outcome. In Joynes, we held that an attempt to introduce

> additional evidence into the record after the commissioner [in chancery] has filed his report is treated as a motion to receive after-discovered evidence. Four requirements must be met before a record can be reopened to receive additional evidence: (1) the evidence must have been discovered after the record was closed; (2) it could not have been obtained prior to the closing of the record through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative, or collateral, and (4) it is material, and as such, should produce an opposite result from that contained in the commissioner's report.

Joynes, 36 Va. App. at 418, 551 S.E.2d at 18 (citations omitted).

Here, husband did not establish that the testimony of the handwriting expert could not have been obtained before the commissioner in chancery filed her report. Indeed, husband presented no argument or evidence, and the trial court issued no ruling, related to the Joynes test for reopening the record. As such, the trial court erred in reopening the record on the forgery

---

[1] Code § 20-107.3(E)(5) provides that the "circumstances and factors which contributed to the dissolution of the marriage" shall be considered in making an equitable distribution award.

issue.[2]  Accordingly, we vacate the equitable distribution award and we remand to the trial court for reconsideration of the equities.

## B. Attorney Fees

Wife requests that we vacate the trial court's award of attorney's fees and costs to husband, which award was based on the handwriting expert's fee and the portion of husband's attorney's fees attributable to the forgery issue.  Because we find that the trial court erred in hearing additional evidence on the forgery issue, we vacate the award of attorney's fees and costs.

Husband requests this Court to direct wife to pay his attorney's fees and costs incurred on appeal.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  We deny the request in part.  However, we find that husband is entitled to attorney's fees and costs incurred in responding to wife's "Motion to Deny Appellee Oral Hearing," which was based on husband's failure to file a brief with proper margins pursuant to Rule 5A:4.  Rule 5A:4(C) provides that no appeal shall be dismissed for failure to comply with the Rule, but that the Clerk may require that the document be redone in compliance with the rule.  The Clerk did not require husband's brief to be redone; thus, the brief was deemed to be in compliance with the rule.

---

[2] Nothing in our opinion changes well-established law that a commissioner in chancery's report does not have the binding effect of a jury verdict, see Code § 8.01-610, or that the commissioner in chancery serves to aid, not replace, the trial court's judicial function.  See Dukelow v. Dukelow, 2 Va. App. 21, 26-27, 341 S.E.2d 208, 211 (1986).  We hold only that where an order refers certain issues to a commissioner in chancery and thereby defines the scope of the commissioner's evidentiary responsibilities relative to those of the trial court, whether the record should be reopened is governed by existing law.  Here, the trial court could have rejected the commissioner's report or husband could have established that the Joynes requirements were met.  See Code § 8.01-610; Joynes, 36 Va. App. at 418, 551 S.E.2d at 18.

Wife's motion was without merit.  Therefore, we remand to the trial court with direction that it award husband reasonable attorney's fees and costs incurred in defending that motion.  <u>Id.</u>

<u>Vacated and remanded</u>.

McClanahan, J., dissenting.

I disagree with the majority's holding in this case and, for the reasons that follow, would affirm the judgment of the trial court.

"The Supreme Court has defined the authority of a commissioner in chancery in an equity proceeding as 'an officer appointed by the chancellor to aid him in the proper and expeditious performance of his duties.'" Kelker v. Schmidt, 34 Va. App. 129, 136-37, 538 S.E.2d 342, 346 (2000) (quoting Raiford v. Raiford, 193 Va. 221, 226, 68 S.E.2d 888, 891 (1952)), see also Haase v. Haase, 20 Va. App. 671, 678-79, 460 S.E.2d 585, 588 (1995). The Fairfax County Circuit Court general decree directs a commissioner in chancery to find the grounds of divorce alleged in the pleadings. And, in those cases in which a party seeks equitable distribution, the commissioner is required to determine the circumstances and factors that may have contributed to the dissolution of the marriage. However, section 8A of the general decree specifically reserves to the trial court the findings relevant to any behavior on the part of the parties that affects the well-being of the family, its marital property and value. Those findings are to be made at the hearing on equitable distribution. Section 8A of the decree of reference makes it clear that hearings on the grounds of divorce and hearings on equitable distribution are separate and that findings at the divorce stage are not binding at the equitable distribution stage.

Upon a review of the record, it is clear that both the commissioner and chancellor understood that the commissioner's scope of referral was limited to a finding on the issue of the grounds of divorce. The issue of how the parties' behavior may have impacted the equitable distribution of the marital estate specifically was not referred to the commissioner, but reserved to the trial court. The commissioner found, and the chancellor affirmed, that even if husband had proven the credit card forgery allegations, they would not amount to legal justification for

- 10 -

desertion of the marriage. The commissioner did not find that the forgery did not occur. Therefore the trial court was not precluded from hearing evidence on the forgery allegations as behavior that had an effect "upon the well-being of the family and/or the marital property and its value" as part of the equitable distribution hearing, as provided by section 8A of the general decree of reference.

The majority's characterization of the evidence husband presented to the trial court as "additional evidence" subject to the test recited in Joynes v. Payne, 36 Va. App. 401, 551 S.E.2d 10 (2001), is misplaced. Joynes involved a situation where all of the issues in the divorce proceeding were referred to the commissioner in chancery. In the Joynes case, there was nothing left for the trial court to do but to hear exceptions to the commissioner's report, either confirm or reject the report, and enter the final decree. In Joynes, this Court stated that it would not consider whether the request to present additional evidence was improperly denied, as the record did not disclose the nature of the evidence and the circumstances surrounding the request.[3] In the case at bar, every issue in the proceeding, including the issue of equitable distribution, was reserved to the trial court, "other than the factors and circumstances contributing to the dissolution of [the] marriage; fault grounds to the extent pled or testified and the other statutory requirements to establish the jurisdiction of the court in the divorce proceeding." (Transcript from commissioner's hearing, February 14, 2003, p. 5, lines 10-15.) Therefore, because in this case, unlike in Joynes, there were issues left to the trial court that were not before the commissioner, the Joynes test for admission of additional evidence does not apply.

---

[3] Additionally, in contradistinction to the majority's view of the case, in Joynes, after the chancellor wholly affirmed the commissioner's report, it "awarded child support in a different amount than that recommended by the commissioner, presumably based upon the actual amount of private school tuition." 36 Va. App. at 426 n.5, 551 S.E.2d at 24 n.5. That statement suggests that in order to make its determination of the child support amount, the trial court had evidence before it that was not before the commissioner.

As the majority indicates, trial courts "have the authority to interpret their own orders." Fredricksburg Constr. Co., Inc. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000). However, on appeal, "'when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court.'" Albert v. Albert, 38 Va. App. 284, 298, 563 S.E.2d 389, 396 (2002) (quoting Fredericksburg Constr. Co., 260 Va. at 144, 530 S.E.2d at 152; Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999) (en banc)); see also Leitao v. Commonwealth, 39 Va. App. 435, 438, 573 S.E.2d 317, 319 (2002) (stating, "we defer to a trial court's interpretation of its own order"); Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 411 (2002). The trial court's interpretive discretion, however, "must be exercised reasonably and not arbitrarily or capriciously." Smoot, 37 Va. App. at 500, 559 S.E.2d at 412 (citation omitted). The analysis therefore, requires determining whether the trial court abused its discretion when interpreting its decree of reference to the commissioner. That analysis does not allow this Court to substitute its own interpretation for the trial court's interpretation, if the trial court's construction is reasonable. I believe that the trial court's interpretation of the decree of reference was reasonable and falls within the latitude we afford trial courts in the construction of their own decrees. For that reason, I would not find that the chancellor abused his discretion in hearing the forgery evidence for purposes of equitable distribution.

Moreover, "[w]hen a court refers a cause to a commissioner in chancery, it does not delegate its judicial functions to the commissioner and is not bound by the commissioner's recommendations. Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required." Dukelow v. Dukelow, 2 Va. App. 21, 26-27, 341 S.E.2d 208, 211 (1986) (citing Lawrence v. Lawrence, 212 Va. 44, 47, 181 S.E.2d 640, 643 (1971)). Code § 8.01-610 provides: "The report of a commissioner in

- 12 -

chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence."

The commissioner limited her discussion on the forgery issue to whether the evidence presented at the commissioner's hearing satisfied the burden of proof, and only as to its effect on the desertion issue. The commissioner wrote,

> Finally the evidence on this issue is in equipoise. With the testimony of one party in total contradiction of the other party, as clearly supported by the record here, and no evidence beyond the documents from which both parties are testifying, GRANT MORRILL did not meet his burden of proving by a preponderance of the evidence that NAHEED MORRILL forged his signature in the circumstances and *for the purposes for which he has testified.*

(Emphasis added.) The purpose for which husband was testifying was not equitable distribution, but grounds of divorce. The commissioner did not make a finding on the issue beyond whether husband had proven it for the purposes of legal justification for desertion.

Further, the commissioner did not make a specific finding that wife did not commit the forgery. The commissioner found the evidence to be in equipoise – neither proven nor disproven. The only finding that the commissioner made with regard to the forgery was to state, "However, even if true, the circumstances do not necessarily give rise to a finding of legal justification, as argued by him, or preclude the finding of desertion based on the evidence presented." Such a statement does not rise to the level of a finding that wife did not commit the forgery. In fact, the statement leads to the conclusion that the commissioner did not need to make a finding on this issue, because it was not relevant to the purpose of the hearing, which was establishing the grounds of divorce.

The chancellor accepted and affirmed the commissioner's report with regard to its findings on the issue of the grounds of divorce. The chancellor found no reason to grant

- 13 -

husband's exceptions because he agreed with the commissioner's view that the wife's forgery of credit card checks would not amount to legal justification for desertion of the marriage. However, affirmation of that finding on the grounds of divorce issue did not preclude the court from hearing evidence on the forgery allegations with regard to their effect on the equitable distribution award. The forgery allegations were a factor and circumstance that led to the dissolution of the marriage, even though not proven for that purpose. The sentence in section 8A of the general decree, which says, "However, the effect of that behavior upon the well-being of the family and/or the marital property and its value are to be presented at the equitable distribution hearing," clearly indicates that the findings of the commissioner are not binding on the court in its equitable distribution hearing. The trial court was within its authority to examine evidence regarding the effect of the allegations on the marital property.

In this case, the commissioner was not authorized to make findings on equitable distribution; that task was left to the trial court. The commissioner made her findings on the grounds of divorce, and the trial court made its findings on equitable distribution, as required by section 8A of the decree of reference. As stated above, trial courts "have the authority to interpret their own orders." Fredricksburg Constr. Co., Inc., 260 Va. at 144, 530 S.E.2d at 152. Therefore, I respectfully dissent. The trial court did not abuse its discretion in so interpreting the general decree.

- 14 -